```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 0 3 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Michael Sanchez,

                Plaintiff,

–v–

R. Stevens, *et al.*,

                Defendants.

13-CV-3645 (AJN)

MEMORANDUM
AND ORDER

ALISON J. NATHAN, District Judge:

      On July 29, 2014, Defendants Robert Bentivegna, Richard Burns, and Kevin LaPorto (the "Moving Defendants") moved for summary judgment with respect to Plaintiff Michael Sanchez's claims asserted against them for deliberate indifference to his medical needs and retaliation. Dkt. No. 39.[1] As of September 19, 2014, Plaintiff had failed to file an opposition, but the Court afforded him until October 13, 2014 to indicate whether he intended to file an opposition to the motion. Dkt. No. 47. On October 9, 2014, Plaintiff filed a letter with the Court representing that he never received the motion, and that "[d]ue to security and safety issues, [he would] not file an opposition brief against [D]efendants['] motion." Dkt. No. 48. On October 15, 2014, the Moving Defendants sent Plaintiff a second copy of their motion for summary judgment. Dkt. No. 49. The Court has still not received an opposition to the Moving Defendants' motion for summary judgment, so the Court deems the motion fully briefed. For the reasons stated herein, the motion for partial summary judgment is GRANTED.

---

[1] Defendants Ryan Stevens, Terry Sawyer, Brenda Sarber, and Jeffrey Tokarz (the "non-Moving Defendants") did not move for summary judgment. Def. Br. at 1. The Office of the Attorney General of the State of New York did not receive requests for representation from Defendants J. Daniels or M. O'Neil and stated to the Court that it did not believe that these Defendants had been served. Answer at 1 n.1. On August 2, 2013, the Court dismissed Plaintiff's claims against the various John Does named in his Complaint. Dkt. No. 6.

1

I.   **LEGAL STANDARD**

Summary judgment shall be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, a court views all evidence in the light most favorable to the non-movant, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

II.  **BACKGROUND**

At the time of the events described herein, Plaintiff was incarcerated at Green Haven Correctional Facility. Although the present motion for partial summary judgment does not extend to Plaintiff's claims for excessive use of force against LaPorto or the non-moving Defendants, the Court discusses the facts revolving around those claims to provide context for Plaintiff's deliberate indifference and retaliation claims. Plaintiff did not submit any declarations or other documentary evidence to contradict the evidence provided by the Moving Defendants.

According to the use of force reports that were attached to the Declaration of Jason C. Clark, Dkt. No. 41, Sawyer contends that on May 29, 2010, he witnessed Plaintiff acting suspiciously in the recreation yard, so he approached Plaintiff and ordered him to submit to a pat frisk in the "F&G" Corridor. Clark Decl. Ex. B. at 1. Sawyer ordered Plaintiff to keep his hands out of his pockets, but Plaintiff instead put his hands in his pockets and refused to remove them. Clark Decl. Ex. B. at 1. At his deposition, Plaintiff stated that the officers told him to put his hands *in* his pockets, rather than take them out. Sanchez Dep.[2] Tr. 10:2-10:5. Sawyer contends that after he gave additional orders to Plaintiff to take his hands out of his pockets, Plaintiff began running away. Clark Decl. Ex. B. at 1. Plaintiff stated that he complied with the order

---

[2] Portions of Plaintiff's deposition transcript were provided as Exhibit A to the Clark Declaration.

and began walking to the Corridor. Sanchez Dep. Tr. 12:22-13:10. Plaintiff's Complaint alleges that Sawyer then grabbed him from behind, put him in a choke hold, and tackled him to the ground. Compl. Ex. B. ¶ 3. Sawyer stated in the use of force report that "I then used a body hold by placing my right hand around the inmate's right shoulder and my left hand along the inmate's left ribcage and we both then fell on the basket ball court." Clark Decl. Ex. B. at 1. Sawyer then called for assistance, secured Plaintiff's left arm and placed it in the small of his back, and assisted Plaintiff to his feet until a responding officer arrived to place mechanical restraints on Plaintiff. Clark Decl. Ex. B. at 1. Plaintiff alleges in his Complaint that Stevens was the one who handcuffed him from behind, while LaPorto, Sarber, and other officers responded to the incident. Compl. Ex. B. ¶ 6. The use of force reports filed by Stevens and O'Neil are consistent with Sawyer's use of force report. *See* Clark Decl. Ex. B. at 1-3.

The use of force reports indicate that following the incident on the basketball court, Plaintiff was escorted to the prison's medical clinic without further incident. However, Plaintiff alleges that after handcuffing him, Stevens, Daniels, O'Neil, Tokarz, and Sawyer slammed him into a wall and punched him repeatedly in the upper body. Compl. Ex. B. ¶¶ 8-10; Sanchez Dep. Tr. 18:19-21:24. Plaintiff alleges that during the alleged assault inside the corrirdor, LaPorto cursed at him and told him to "be a man bitch and take it like one, cause I run this jail," and "you had this coming since 2006." Compl. Ex. B. ¶ 19. Plaintiff further alleges that LaPorto then directed Daniels and O'Neil to take Plaintiff to the medical clinic, and on their way to the clinic, Daniels and O'Neil allegedly continued to punch Plaintiff in his upper body. Compl. Ex. B. ¶ 11; Sanchez Dep. Tr. 20:5-21:24.

When Plaintiff arrived at the medical clinic, he was evaluated by Burns, a nurse at the clinic. Burns Aff. ¶ 4; Sanchez Dep. Tr. 28:3-6. Plaintiff alleges that Burns told him to "just say you fell down, everything will be better for you." Compl. Ex. B. ¶ 12; Sanchez Dep. Tr. 27:13-28:2. Plaintiff further alleges that Burns refused to render medical treatment and ignored Plaintiff's request for pain medication. Compl. Ex. B. ¶ 12; Sanchez Dep. Tr. 28:7-15, 29:12-13. After examining Plaintiff, Burns prepared an injury report and a use of force report. Sanchez

3

Dep. Tr. 27:24-25:2; 28:7-15; Burns Aff. ¶ 8; Clark Decl. Ex. B. at 5, 14. The report indicates that Burns identified a one-inch bruise on Plaintiff's left shoulder, a three-inch cut on his abdomen, and that Plaintiff complained of numbness in his left hand. Burns Aff. ¶ 5; Clark Decl. Ex. B. at 5. The report also indicates that there were no bruises on Plaintiff's face or head, and that Plaintiff was slow to answer questions. Burns Aff. ¶ 5; Clark Decl. Ex. B. at 5. Burns then informed the on-call physician, Dr. Jeffrey Norwood, of his observations, including his belief that Plaintiff may have taken an outside stimulant. Burns Aff. ¶ 7. Sarber then took several photographs of Plaintiff. Sanchez Dep. Tr. 30:18-21; Clark Decl. Ex. B. 15-19. Burns stated in his affidavit that he does not have authority to prescribe medication, Burns Aff. ¶ 3, and Plaintiff stated that Burns told him to ask the doctor the following morning about pain medication, Sanchez Dep. Tr. 30:22-31:7.

Plaintiff was also subjected to a urinalysis exam, which LaPorto had requested in light of his observation that Plaintiff had been staggering and had slurred speech. Clark Decl. Ex. B. at 6. Non-defendant Officer Gregory Trembath managed the urinalysis exam. Clark Decl. Ex. B. at 6-10. The urine specimen was tested twice; both test results came back positive for cannabinoids (i.e., marijuana). Clark Decl. Ex. B. at 6-10. At his deposition, Plaintiff contended that he never submitted a urine sample. Sanchez Dep. Tr. 47:4-16.

On June 1, 2010, Plaintiff was examined by Dr. Bentivegna. Sanchez Dep. Tr. 31:25-36:7; Bentivegna Aff. ¶ 2; Clark Decl. Ex. B. at 14. Dr. Bentivegna then prepared a report indicating that Plaintiff was involved in a use of force incident over the weekend and was complaining of pain in his left shoulder and left hand. Bentivegna Aff. ¶ 2; Clark Decl. Ex. B. at 14. Dr. Bentivegna recommended symptomatic treatment for Plaintiff's injuries and made a notation to continue monitoring his left shoulder. Bentivegna Aff. ¶ 2; Clark Decl. Ex. B. at 14. Plaintiff complained that during the medical exam, Dr. Bentivegna only offered him ibuprofen. Sanchez Dep. Tr. 31:14-17.

Dr. Bentivegna examined Plaintiff again the next day, June 2, 2010. Sanchez Dep. Tr. 34:9-14; Bentivegna Aff. ¶ 3; Clark Decl. Ex. B. at 13. Plaintiff told Dr. Bentivegna that his left

hand was broken, but Dr. Bentivegna noted that Plaintiff was able to flex and extend his wrist, so Dr. Bentivegna concluded that it was not broken. Bentivegna Aff. ¶ 3; Clark Decl. Ex. B. at 13. Dr. Bentivegna further concluded that Plaintiff had only suffered a soft tissue injury to his wrist and that no immediate action was required. Bentivegna Aff. ¶ 3. He did, however, prescribe Plaintiff an analgesic balm to alleviate the pain and non-steroidal anti-inflammatory drugs as needed. Bentivegna Aff. ¶ 3.

Dr. Bentivegna examined Plaintiff a third time the following day, June 3, 2010. Bentivegna Aff. ¶ 4. Plaintiff claimed that he could not lift his left arm above shoulder level, but Dr. Bentivegna believed that Plaintiff's claimed inability to lift his arm was contrived. Bentivegna Aff. ¶ 4. Nonetheless, because he could not rule out a rotator cuff injury, Dr. Bentivegna scheduled an x-ray exam for Plaintiff's left shoulder. Bentivegna Aff. ¶ 4.

Plaintiff underwent an x-ray exam on June 7, 2010. Bentivegna Aff. ¶ 5. The radiologist's report indicated that there was no fracture, dislocation, or arthritic change in Plaintiff's left shoulder. Bentivegna Aff. ¶ 5; Sanchez Dep. Tr. 35:2-12; Clark Decl. Ex. B. at 11. (In his Complaint, Plaintiff alleges that Bentivegna denied his requests for x-rays and adequate medical examination. Compl. Ex. B. ¶ 14. But at his deposition, Plaintiff acknowledged that he was given an x-ray exam, which showed no sign of injury to his left shoulder. Sanchez Dep. Tr. 35:2-12.)

### III. DISCUSSION

Plaintiff's only claims asserted against Burns and Dr. Bentivegna are for deliberate indifference to his medical needs. Plaintiff asserts claims for excessive use of force and First Amendment retaliation against LaPorto, but only the latter claim is before the Court on this motion for partial summary judgment. As discussed in greater detail below, because there is no genuine dispute as to any material fact concerning these claims, the Moving Defendants are entitled to judgment as a matter of law on Plaintiff's deliberate indifference and First Amendment retaliation claims.

A.  **Deliberate Indifference**

Plaintiff's Complaint alleges that Defendants Burns and Bentivegna denied him adequate medical treatment, which the Court construes as asserting a claim under the Eighth Amendment of the U.S. Constitution. "The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Such a claim for deliberate indifference to serious medical needs "contains two requirements. The first requirement is objective: 'the alleged deprivation of adequate medical care must be sufficiently serious.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)). With respect to this first requirement, "[o]nly 'deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Salahuddin*, 467 F.3d at 279 (quoting *Wilsom v. Seiter*, 501 U.S. 294, 298 (1991)). And "[d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries." *Id.* First, courts must consider "whether the prisoner was actually deprived of adequate medical care." *Id.* Second, courts must consider "whether the inadequacy in medical care is sufficiently serious," which "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280 (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citing *Salahuddin*, 467 F.3d at 280). "This means 'that the charged official [must] act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result.'" *Id.*

Beginning with the seriousness of the harm, Plaintiff provides no evidence to suggest that he was actually deprived of adequate medical care. Although Plaintiff initially stated in his Complaint that Nurse Burns refused to render medical treatment and ignored his request for pain medication, the Moving Defendants provided uncontroverted evidence that Burns conducted an examination of Plaintiff that was then conveyed to the on-call doctor at the time. That Burns did

6

not consider Plaintiff's injuries sufficiently serious to warrant further action does not alone indicate that Plaintiff was deprived of adequate medical care. Moreover, Burns testified that he does not have the authority to prescribe medication and so he could not have given Plaintiff medication even if he had wanted to. Plaintiff also does not controvert the evidence that he was seen by Dr. Bentivegna three days after the May 29, 2010 incident, or that he was then seen by Dr. Bentivegna on each of the two following days. Although Dr. Bentivegna concluded that Plaintiff's injuries were minor, he nonetheless prescribed an analgesic balm and non-steroidal anti-inflammatory drugs and ordered an x-ray of Plaintiff's left shoulder. That x-ray revealed no fractures, dislocation, or arthritic change. Plaintiff may have preferred to have been seen right away by Dr. Bentivegna, but, under the circumstances, a three-day delay before he was seen by a doctor does not amount to an actual deprivation of adequate medical care. This is particularly true in light of the fact that he was immediately seen by medical staff who determined that Plaintiff's injuries were relatively minor. Subsequent medical evaluations concurred with the initial assessment that Plaintiff's injuries were relatively minor. Finally, there is no evidence in the record that Burns or Dr. Bentivegna failed to act while actually aware of a substantial risk that serious harm would result to Plaintiff.

Because Plaintiff was not actually deprived of adequate medical care, he cannot establish the first requirement of his Eighth Amendment claim. Similarly, because there is no evidence to suggest Burns or Dr. Bentivegna were subjectively reckless in their provision of medical care, he cannot establish the second requirement of his Eighth Amendment claim. Therefore, because there is no genuine dispute of material fact concerning either requirement of Plaintiff's Eighth Amendment claim, the Moving Defendants are entitled to summary judgment on this claim.

**B.     Retaliation**

Plaintiff's Complaint states that while he was allegedly being assaulted in the Corridor, Defendant LaPorto told him "you had this coming since 2006," which the Court liberally construes as possibly asserting a First Amendment retaliation claim.

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [speech or conduct] and the adverse action.'" *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)).

At his deposition, Plaintiff stated that LaPorto's comment during the alleged beating refers to a disciplinary hearing in 2006 that LaPorto presided over. Sanchez Dep. Tr. 41:19-42:2. During the hearing, Plaintiff made a gesture toward LaPorto that LaPorto interpreted as being disrespectful, which led LaPorto to tell Plaintiff "[t]hat if [he] c[a]me in again with some nonsense . . . it was going to be [Plaintiff's] f***ing ass." Sanchez Dep. Tr. 42:11-43:18.

Plaintiff does not contend that LaPorto retaliated against him because he filed a complaint or made allegations against LaPorto before, during, or after the hearing. Rather, Plaintiff appears to acknowledge that he made what LaPorto interpreted to be a disrespectful hand gesture, and this is what led to the subsequent excessive use of force four years later. Making an inappropriate or disrespectful hand gesture to a correctional officer is not protected speech. *See Johnson v. Carroll*, No. 2:08-cv-1494 KJN P, 2012 U.S. Dist. LEXIS 79380, at *101 (E.D. Cal. June 7, 2012) ("The consensus of the cases that have considered the issue appears to be that an inmate's verbal challenges or rantings to correctional staff are not within the ambit of First Amendment protection." (collecting cases)).

Therefore, because an inmate's inappropriate hand gesture made to a correctional officer during a disciplinary hearing is not protected speech, LaPorto is entitled to judgment as a matter of law on Plaintiff's First Amendment retaliation claim. As noted above, however, this conclusion has no bearing on Plaintiff's claims of excessive use of force against LaPorto, which are not before the Court at this time.

## IV.   CONCLUSION

For the reasons discussed herein, the Moving Defendants motion for partial summary judgment is GRANTED. This resolves Dkt. No. 39. Because there are no additional claims

8

asserted against Defendants Burns or Bentivegna, they are dismissed from this action. With respect to LaPorto, only the claim for First Amendment retaliation is dismissed at this time. The Court further finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

As noted above, this Memorandum and Order does not address the remaining claims for excessive force against LaPorto and the non-moving Defendants—Stevens, Sawyer, Sarber, and Tokarz—which remain to be tried.

By separate order, the Court will request *pro bono* counsel to represent Plaintiff going forward. If *pro bono* counsel appears on behalf of Plaintiff, this action will be governed by the undersigned's Individual Practices in Civil Cases. Therefore, if *pro bono* counsel appears on behalf of Plaintiff, within 30 days of Plaintiff's counsel's appearance in this action, the parties shall jointly file the pretrial report as required by Rule 5.A. of the undersigned's Individual Practices in Civil Cases.

If *pro bono* counsel does not appear on behalf of Plaintiff, the case will proceed under the Special Rules of Practice in Civil Pro Se Cases.

If *pro bono* counsel has not appeared in this action by April 1, 2015, Plaintiff shall submit a letter no later than April 15, 2015 indicating whether he remains interested in accepting *pro bono* representation and, if so, the status of any efforts to identify *pro bono* counsel for him.

SO ORDERED.

Dated: February 3, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge